# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO


**SATNAM SINGH CHANA**,

      Plaintiff,

  vs.                                 No.    **CIV 03-0093 MCA/RHS**

**THE CITY OF ROSWELL**,
a municipal corporation,

      Defendant.


## MEMORANDUM OPINION AND ORDER


**THIS MATTER** comes before the Court on ***Defendants' Motion for Summary Judgment*** [Doc. No. 20] filed on November 10, 2003.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendant's motion in part with regard to the state-law claim for breach of contract in Count III of Plaintiff's *Complaint*, and denies Defendant's motion in part with regard to the Title VII claims for discrimination on the basis of religion and national origin in Counts I and II of Plaintiff's *Complaint*.

## I.     BACKGROUND

     Defendant City of Roswell terminated Plaintiff Satnam Singh Chana's employment as a maintenance worker at the Roswell Air Center on September 13, 2001, just two days after the terrorist attacks of September 11, 2001.  On January 21, 2003, Plaintiff filed this

civil action alleging that Defendant engaged in discrimination based on his religion and national origin in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17.   Plaintiff's *Complaint* also claims that Defendant's termination of his employment constitutes a breach of contract that is actionable under state law.  [Doc. No. 1.]

On November 10, 2003, Defendant moved for summary judgment on all of Plaintiff's claims.  [Doc. No. 31.]  The undisputed facts and evidence of record relating to Defendant's summary-judgment motion can be summarized as follows.

Plaintiff was born in Phagwara, India, and he practices the Sikh religion.  He emigrated to the United States in 1989.  There is no evidence in the record of any problems with Plaintiff's immigration status or any other security concerns that would render him ineligible for employment at an airport in the United States.  [Chana Dep. at 7, 19.]

Plaintiff began working for the City of Roswell as an Air Center Maintainer (or maintenance worker) on May 24, 2001.  While employed by Defendant, Plaintiff was the only Sikh Indian employee in his department.  [Chana Dep. at 10-11; Franco Dep. at 10-11; Ex. E to Pl.'s Resp.; Compl. ¶ 6; Answer ¶ 1.]

Manny Franco was the Air Center Superintendent who interviewed Plaintiff when he was a prospective employee and acted as Plaintiff's immediate supervisor during his employment with the City of Roswell.  An electrician named Rudy Quintana would be left in charge when Mr. Franco was absent.  Mr. Franco reported to Dennis Ybarra, who was the Air Center Manager during the relevant time period, and who also interviewed Plaintiff when Plaintiff was a prospective employee.   Mr. Ybarra's duties included making

recommendations to the City Manager regarding the hiring and termination of employees. [Chana Dep. at 11-12, 16; Franco Dep. at 3-4, 13, 15; Ybarra Dep. at 3-5, 16.]

Plaintiff's job duties as an Air Center Maintainer involved mowing approximately fifty to sixty percent of the time and assisting the carpenter, electrician, welder, or mechanic approximately forty to fifty percent of the time.  Mr. Franco described Plaintiff as an "average" worker who got along with everybody and did what he was asked to do.  Plaintiff received a raise on June 29, 2001, and was never disciplined during his employment with the City of Roswell.  [Chana Dep. at 15-16; Franco Dep. at 11, 14-16, 19-20.]

According to Plaintiff, his co-workers at the airport were aware of his religion and nationality, and they made comments about his religion and nationality that he found offensive.  In particular, Plaintiff claims that several of his co-workers made statements to the effect that he should not go close to the airplanes because he looked like a hijacker or a terrorist.  They also allegedly made fun of Plaintiff's traditional Sikh headwear or "turban," and referred to Plaintiff as an "Indian" who "don't know nothing" and should be given "hard jobs."  Plaintiff alleges that these types of comments were made about ten or fifteen times, and that the co-workers who made such statements included Joe Torrez, Frankie Sumario, Manuel Campos, and electrician whose name Plaintiff could not recall.  Plaintiff further alleges that he reported his co-workers' offensive comments to his supervisor, Mr. Franco, on two occasions.  According to Plaintiff, Mr. Franco told him, "they're just playing with you," and took no action against any of the other workers.  Mr. Franco does not recall any

such reports.  He claims to be unaware of Plaintiff's religion, national origin, and any offensive comments made by his co-workers.  [Chana Dep. at 19-29; Franco Dep. at 25-26.]

After the terrorist attacks were first reported on September 11, 2001, Plaintiff claims that he was sent to the shop to clean up while all of his co-workers were assigned to duties inside the airport.  When Plaintiff reported to work the next morning, he claims that a security guard told him to stay outside the airport and that another employee made comments to the effect that he should not be allowed to get close to the airplanes because "he's the Indian" and "he looks like a terrorist."  [Chana Dep. at 41-44.]

Plaintiff's employment with the City of Roswell was terminated on September 13, 2001.  Plaintiff proceeded to file a claim of discrimination with the EEOC.  In response to the EEOC's investigation, the City's Human Resources Director, Stacye L. Hunter, stated that Plaintiff "was discharged because of problems with co-workers and because he wasn't a good worker."  [Ex. C, E to Pl.'s Resp.]

After exhausting his administrative remedies before the EEOC and filing this civil action, Messrs. Franco and Ybarra were deposed.  In their depositions, Messrs. Franco and Ybarra stated that they were involved in the decision to terminate Plaintiff's employment and that this decision stemmed from Plaintiff's alleged statements that "he wasn't sure" how long he planned to stay at the airport and that he "was going to leave soon."  According to Messrs. Franco and Ybarra, Plaintiff gave them the impression that "he wasn't going to be there long-term," and this impression formed the basis for their decision to terminate his employment. They reasoned that it was not worth the investment required to train Plaintiff unless he was

going to be a long-term employee.  Plaintiff denies making any statements to the effect that he was planning to leave his job or did not want to become a long-term employee.  [Chana Dep. at 32; Franco Dep. at 20-24; Ybarra Dep. at 5, 8, 14-16, 32; Compl. ¶ 5; Answer ¶ 1.]

At the time Plaintiff's employment with the City of Roswell was terminated, he was still a probationary employee.  The Personnel Rules and Regulations of the City of Roswell in effect at that time provided that:  "An employee may be terminated at any time during initial probation upon recommendation of the department head and approval by the City Manager, without cause."  These rules and regulations also contain an "equal employment opportunity policy" as well as a disclaimer to the effect that the City's rules and regulations shall not be construed to create a contractual right between the City and an employee.  [Hunter Aff. ¶¶ 4-7; Ybarra Dep. at 15-16.]

## II.   ANALYSIS

### A.   Standard of Review

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if it might affect the outcome of the case.  See id. at 248.  Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential

element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party initially must make a *prima facie* showing that summary judgment is appropriate under Fed. R. Civ. P. 56.  If the moving party makes such a *prima facie* showing, then the burden of going forward shifts to the non-moving party, who must show by affidavit or otherwise that a genuine issue of material fact remains for the factfinder to resolve.  See Celotex Corp., 477 U.S. at 323.

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See id. at 324.  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995).  The Court may, however, consider admissions by a party opponent, see Fed. R. Evid. 801(d)(2), statements admissible for the limited purpose of showing their effect on the listener, see Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993), statements which constitute verbal acts or operative facts because legal consequences flow from their utterance, see Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001), and other statements which fall under an exception to the hearsay rule, see, e.g., Fed. R. Evid. 803(3) (allowing for consideration of statements as circumstantial proof of the knowledge, intent, or state of mind of the declarant).

-6-

Apart from these limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

**B.    Plaintiff's Federal Civil-Rights Claims Under Title VII**

In this case, Plaintiff asserts that Defendant's decision to terminate his employment on September 13, 2001, constitutes intentional discrimination based on his religion and national origin.  The relevant provision of Title VII of the Civil Rights Act "makes it an 'unlawful employment practice for an employer . . . to discriminate against any individual . . . , because of such individual's race, color, religion, sex, or national origin.'"  Desert Palace, Inc. v. Costa, 123 S. Ct. 2148, 2150 (2003) (quoting 42 U.S.C. § 2000e-2(a)(1)).  Plaintiff may prove his federal civil-rights claims under this provision of Title VII through direct evidence or by means of the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Desert Palace, Inc., 123 S. Ct. at 2154; Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

The Court first addresses Plaintiff's assertion that he has presented direct evidence of unlawful discrimination.  Using this method of proof, Plaintiff asserts that his co-workers' offensive statements about his religion and national origin, as well as their instructions to

stay away from the airplanes and stay out of the airport, constitute direct evidence that his employment was terminated because he is an Indian and/or because he is a Sikh.

There is some degree of conflict among and within the circuits as to exactly what constitutes "direct evidence" in this context.  See Costa v. Desert Palace, Inc., 299 F.3d 838, 851-54 (9th Cir. 2002) (en banc), aff'd, 123 S. Ct. 2148 (2003); Wright v. Southland Corp., 187 F.3d 1287, 1294-1303 (11th Cir. 1999).  In some cases, the Tenth Circuit has applied a narrow definition of what evidence is "direct."  See, e.g., Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir. 1999) (quoting Black's Law Dictionary 460 (6th ed. 1990) for the proposition that:  "Direct evidence is 'evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'").  In other cases, the Tenth Circuit has defined the direct method of proving unlawful discrimination somewhat more broadly to include "'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged [discriminatory] attitude.'"  Thomas v. Denny's, Inc., 111 F.3d 1506, 1512 (10th Cir. 1997) (quoting Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1471 n.5 (10th Cir. 1992)); accord Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 550 (10th Cir. 1999).

Under either of these definitions, "[s]tatements showing 'an existing policy which itself constitutes discrimination' are direct evidence of discrimination."  Heim v. State of Utah, 8 F.3d 1541, 1546 (10th Cir. 1993) (quoting Ramsey v. City & County of Denver, 907 F.2d 1004, 1008 (1990)).  In addition, "oral or written statements on the part of a defendant showing a discriminatory motivation" are "direct evidence of discrimination," Kendrick, 220

-8-

F.3d at 1225, provided that they "'actually relate to the question of discrimination in the particular employment decision, not to the mere existence of other, potentially unrelated, forms of discrimination in the workplace.'" Medlock, 164 F.3d at 550 (quoting Thomas v. Nat'l Football League Players Ass'n, 131 F.3d 198, 204 (D.C. Cir. 1997)). On the other hand, mere "statements of personal opinion" that reflect a bias or prejudice which is not tied to the particular employment action at issue are not sufficient to directly prove a discriminatory motive because "the trier of fact would have to infer that the bias reflected in the statements was the reason behind the adverse employment action." Shorter, 188 F.3d at 1207.

Even under the more liberal definitions cited above, the Court determines that the discriminatory statements and instructions that Plaintiff attributes to his co-workers do not constitute "direct evidence" that his employment was terminated because he is an Indian and/or because he is a Sikh. In particular, Plaintiff has not presented direct evidence that the statements or instructions in question were made or given by the persons involved in the decision to terminate Plaintiff's employment (i.e., Mr. Franco and Mr. Ybarra) during the course of that decision-making. Rather, the factfinder would be required to make an inference that Mr. Franco or Mr. Ybarra were the source of the discriminatory statements or instructions conveyed to Plaintiff by his co-workers, or that Mr. Franco or Mr. Ybarra shared the discriminatory attitude implied by these statements and instructions during the course of their decision-making regarding the termination of Plaintiff's employment. Evidence that

-9-

requires the factfinder to make such inferences is not "direct evidence" in this context.  See
Shorter, 188 F.3d at 1207.

This conclusion is not dispositive of Plaintiff's Title VII claims, however, because
there is also a second method by which Plaintiff may prove his federal civil-rights claims
under Title VII for the purpose of defeating a motion for summary judgment.  This method
employs the burden-shifting framework set forth in McDonnell Douglas Corp., 411 U.S. at
802.  See Amro v. Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000).

Under this framework, the employee must first establish a prima facie case of
unlawful discrimination in order to survive a motion for summary judgment.  See Perry v.
Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999); Kendrick, 220 F.3d at 1226.  "One way
a plaintiff may establish a prima facie case of wrongful termination is by showing that:  (1)
she belongs to a protected class; (2) she was qualified for her job; (3) despite her
qualifications, she was discharged; and (4) the job was not eliminated after her discharge."
Perry, 199 F.3d at 1135; accord Kendrick, 220 F.3d at 1228.

In this case, Defendant asserts that Plaintiff cannot satisfy the fourth element of a
*prima facie* case of wrongful termination because the position he formerly occupied was
never filled by another worker after his employment with the City of Roswell ended.  While
it is not disputed that the position in question was never filled, the Court does not find this
fact to be dispositive under the particular circumstances of this case.

The requirements of a *prima facie* case are to be measured by "a flexible standard that
may be modified to accommodate different factual situations."  Perry, 199 F.3d at 1140 n.10

-10-

(citing <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 358 (1977)).  Similarly, "the elements of proof in employment discrimination cases were not meant to be 'rigid, mechanized or ritualistic.'" <u>Shapolia v. Los Alamos Nat'l Lab.</u>, 992 F.2d 1033, 1037 (10th Cir. 1993) (quoting <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978)).  "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof . . . is not necessarily applicable in every respect to differing factual situations." <u>McDonell Douglas Corp.</u>, 411 U.S. at 802 n.13.  In light of these authorities, the elements of the *prima facie* case have been modified and adapted to fit many different factual scenarios.  <u>See, e.g.</u>, <u>Perry</u>, 199 F.3d at 1140-41; <u>Shapolia</u>, 992 F.2d at 1038.

In addition, the Tenth Circuit has articulated a more general formulation of the elements of a *prima facie* case for use in situations that "do not fall into any of the traditional categories" or "present unusual circumstances." <u>Kendrick</u>, 220 F.3d at 1227 n.6.  Under this general formulation, the third and fourth elements of a plaintiff's *prima facie* case are combined in a single element that requires a showing that the plaintiff "was terminated under circumstances giving rise to an inference of [unlawful] discrimination." <u>Id.</u> (citing <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)); <u>see, e.g.</u>, <u>Hysten v. Burlington N. and Santa Fe Ry. Co.</u>, 296 F.3d 1177, 1181-82 (10th Cir. 2002); <u>cf.</u> <u>Shapolia</u>, 992 F.2d at 1038 (requiring "some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive").

The Tenth Circuit also has stated that the "proof necessary to establish a prima facie case is not onerous." <u>Perry</u>, 199 F.3d at 1140 (citing <u>Burdine</u>, 450 U.S. at 253).  "The

-11-

purpose behind the prima facie requirement established in <u>McDonnell Douglas</u> is to obligate a plaintiff to "eliminate [] the most common nondiscriminatory reasons for the plaintiff's rejection.'" <u>Id.</u> (quoting <u>Burdine</u>, 450 U.S. at 253-54); <u>accord</u> <u>Kendrick</u>, 220 F.3d at 1226-27. The "two most common, legitimate reasons for termination" are "lack of qualification" and "elimination of the job." <u>Perry</u>, 199 F.3d at 1140; <u>accord</u> <u>Kendrick</u>, 220 F.3d at 1227. Evidence establishing that an employer's decision to discharge an employee was not made for either of these reasons "is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one." <u>Kendrick</u>, 220 F.3d at 1227.

Adapting the requirements of a *prima facie* case to the specific facts of this case in accordance with the authorities cited above, the Court concludes that Plaintiff has satisfied these requirements for purposes of the burden-shifting framework set forth in <u>McDonnell Douglas Corp.</u> The Court reaches this conclusion because even though Defendant has not yet hired another worker to fill the position formerly held by Plaintiff, Plaintiff has presented other evidence to show that his position remained open after his discharge and that Defendant did not discharge him for the most common legitimate, non-discriminatory reasons (*i.e.*, lack of qualification and elimination of the job). This evidence, which is recited in more detail below, satisfies the "critical prima facie inquiry" as to whether "'the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'" <u>Kendrick</u>, 220 F.3d at 1227 (quoting <u>Burdine</u>, 450 U.S. at 253).

According to the evidence submitted by the parties, the two persons most directly involved in the decision to terminate Plaintiff's employment with the City of Roswell were

Messrs. Franco and Ybarra.  In his deposition testimony, Mr. Ybarra indicated that the prospect of not replacing Plaintiff did not enter his "thought process" at the time the decision was made to discharge Plaintiff.  [Ybarra Dep. at 16.]  Further, Mr. Franco's deposition testimony indicates that, at the time Plaintiff's employment was terminated, he "thought we would be able to go out and ... try to replace him right away."  [Franco Dep. at 29.]  Within the "next couple of weeks" after Plaintiff was discharged, Mr. Franco had a discussion with Mr. Ybarra about putting Plaintiff's former position out for applications.  [Franco Dep. at 27-28.]  According to Mr. Franco, Mr. Ybarra never told him that he may not be able to hire a replacement for Mr. Chana.  [Franco Dep. at 29.]   The parties have supplied no evidence that the decision to terminate Plaintiff's employment was based on a determination that the tasks he was performing were no longer necessary or that the City of Roswell was unable to fund his position any longer.

Under these particular circumstances, Title VII does not impose an inflexible rule barring a discharged employee from asserting a claim on the grounds that his former employer later elected to defer hiring a new worker to fill his former position.  Such an inflexible rule is untenable under these circumstances "because it could result in the dismissal of meritorious claims."  Perry, 199 F.3d at 1137.  In particular, such a rule would allow an employer to avert liability for discriminatory employment decisions where the prospect of deferring the hiring of a replacement worker only arises fortuitously after the fact and was never actually considered by the employer as a reason for discharging the employee at the time the decision to discharge was made.

-13-

Applying such a rule in these circumstances would not serve the purposes of the *prima facie* case requirement because it has no logical connection to the task of eliminating "the most common nondiscriminatory reasons for the plaintiff's rejection." Burdine, 450 U.S. 253-54; accord Perry, 199 F.3d at 1140; Kendrick, 220 F.3d at 1226-27. Rather, such an inflexible application would supply employers with a basis for averting liability under Title VII that is totally unrelated to their actual reasons for discharging an employee.

In this case, there is no evidence that Defendants ever considered the need to eliminate Plaintiff's job as a reason for discharging him. Rather, the evidence suggests that Defendant discharged Plaintiff with the expectation that the airport managers would be able to hire a replacement for him, and that Plaintiff's former position remained open until the City later decided to defer hiring a replacement due to budgetary constraints. On these specific facts, the Court concludes that Plaintiff has satisfied the fourth element of a *prima facie* case of employment discrimination under Title VII because he has presented evidence that his employment "was terminated under circumstances giving rise to an inference of discrimination." Kendrick, 220 F.3d at 1227 n.6.

The evidence also supports all other elements of a *prima facie* case of employment discrimination under Title VII. In this regard, Plaintiff has presented evidence that he is a member of a class that Congress intended to protect by enacting Title VII's prohibition of employment discrimination based on religion and national origin. Plaintiff also has presented evidence that he was qualified for his former job as a maintenance worker at the Roswell Air Center and that he was discharged from that job. For these reasons, the Court

concludes that Plaintiff has satisfied all of the essential elements of a *prima facie* of employment discrimination under Title VII.

When, as here, a discharged employee establishes a *prima facie* case under the *McDonnell Douglas* framework, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision that is alleged to be unlawful. If the employer meets this burden, then summary judgment is warranted unless the employee can show that there is a genuine issue of material fact as to whether the reasons proferred by the employer are pretextual or whether his race, age, gender, or other illegal consideration was a motivating factor in the employment decision. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-49 (2000); Kendrick, 220 F.3d at 1226.

In this case, there is no evidence of any problems with Plaintiff's immigration status or any other security concerns that would have rendered him ineligible to work at an airport in the wake of the events of September 11, 2001. Defendant has, however, presented other legitimate, non-discriminatory reasons for the decision to discharge Plaintiff. In response to Plaintiff's claim before the EEOC, Defendant's Human Resources Director, Ms. Hunter, asserted that Plaintiff "was discharged because of problems with co-workers and because he wasn't a good worker." [Ex. E to Pl.'s Resp.] In their deposition testimony, Messrs. Franco and Ybarra each assert that Plaintiff was discharged because it was not worth the investment required to train him in light of his alleged statements expressing uncertainty about his future plans. [Franco Dep. at 20-24; Ybarra Dep. at 8, 14-16.] In light of this evidence, the burden shifts back to Plaintiff to show the presence of a genuine issue of material fact as to whether

Defendant's proffered reasons are pretextual or whether his race, age, gender, or other illegal consideration was a motivating factor in the employment decision.  See Reeves, 530 U.S. at 147-49; Kendrick, 220 F.3d at 1226.

A plaintiff in an employment discrimination case can show pretext by presenting evidence that the reasons proffered by the employer are so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that the employer did not act for those reasons.  See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  In particular, such pretext may be shown by evidence concerning the "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria."  Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999).  Pretext also may be shown:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

Kendrick, 220 F.3d at 1230 (citations omitted).  Further, statements by a decision-maker that directly reflect a discriminatory motive for an employment action also may be used to show pretext under the McDonnell Douglas framework so long as there is some nexus between the statements and the defendant's hiring decision.  See Shorter, 188 F.3d at 1209-10.

-16-

When viewed in the light most favorable to Plaintiff, the Court concludes that the evidence of record supports a reasonable inference of pretext, and thus Plaintiff has met his burden with respect to defeating Defendant's motion for summary judgment on his Title VII claims.  In particular, Plaintiff has presented evidence that the reasons for his discharge proferred by Defendant are false, inconsistent, and contradictory.  The deposition testimony of Messrs. Ybarra and Franco contradicts Ms. Hunter's statement to the EEOC that Plaintiff "was discharged because of problems with co-workers and because he wasn't a good worker." [Ex. E to Pl.'s Resp.]  Messrs. Ybarra and Franco's stated reasons for discharging Plaintiff are in turn contradicted by Plaintiff's deposition testimony, in which Plaintiff denies making the statements about his future plans which allegedly formed the basis for Messrs. Franco and Ybarra's decision to seek his discharge.  [Chana Dep. at 32.]  Further, the reasons for discharging Plaintiff articulated by Ms. Hunter, Mr. Franco, and Mr. Ybarra do not accord with Defendant's later decision to defer hiring a replacement after Plaintiff was discharged.  The reasons proferred by these individuals also do not refer to any objective, verifiable, or written criteria used to measure Plaintiff's performance or evaluate his training needs.  Finally, Plaintiff was the only Sikh Indian employee in his department, and there is evidence of prior discriminatory treatment on the occasions when Mr. Franco allegedly failed to take action in response to Plaintiff's earlier complaints about the offensive comments or instructions of his co-workers.

When viewed in the light most favorable to Plaintiff, this evidence supports a reasonable inference that Defendant's proferred reasons for Plaintiff's discharge are

pretextual and that the decision-making of Defendant's supervisory personnel may have implicitly condoned or ratified the discriminatory attitude toward Indians and Sikhs that was allegedly expressed by Plaintiff's co-workers. Accordingly, the Court concludes that one or more genuine issues of material fact preclude summary judgment on the Title VII claims alleged in Counts I and II of Plaintiff's *Compaint*, and therefore Defendant's motion must be denied in part as to these claims.

### C.    <u>Plaintiff's State-Law Claim for Breach of Contract</u>

In addition to the Title VII claims discussed above, Plaintiff asserts a breach-of-contract claim under the common law of the State of New Mexico. According to Plaintiff, the rules and regulations of the City of Roswell contain an "equal employment opportunity policy," and this policy constitutes an implied term of his employment contract with Defendant. Plaintiff asserts that by breaching its equal employment opportunity policy, Defendant also breached its employment contract with him in a manner that is actionable under state law. Defendant denies these contentions and asserts that its policy does not give rise to a claim for breach of contract under New Mexico law.

In determining whether an equal employment opportunity policy can support a claim for breach of an implied contract under New Mexico law, the New Mexico Court of Appeals has concluded that "[g]eneral policy statements of a non-promissory nature contained in an employee handbook are insufficient to create an implied contract." <u>Stieber v. Journal Publ'g Co.</u>, 120 N.M. 270, 274, 901 P.2d 201, 205 (Ct. App. 1995). To support this conclusion, the <u>Stieber</u> court cited the Tenth Circuit's opinion in <u>Vasey v. Martin Marietta Corp.</u>, 29 F.3d

1460, 1465-66 (10th Cir.1994), which also held that the general statements in an equal employment opportunity policy did not give rise to a claim for breach of an implied contract absent more explicit, definite, and detailed guarantees regarding the terms of employment. The holdings in <u>Stieber</u> and <u>Vasey</u> accord with the general principle of New Mexico law that: "An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." <u>Garrity v. Overland Sheepskin Co. of Taos</u>, 121 N.M. 710, 713-14, 917 P.2d 1382, 1385-86 (1996); <u>accord Cordova v. PNM Elec. and Gas Servs.</u>, No. 01-2326, 2003 WL 21758414 (10th Cir. July 31, 2003) (unpublished disposition).

In this case, the Personnel Rules and Regulations in which Defendant's equal employment opportunity policy is found also contain provisions which limit the rights of probationary employees, as well as a disclaimer to the effect that these rules and regulations are not to be construed as creating a contractual right. Viewing Defendant's equal employment opportunity policy in the context of the evidence presented in this particular case, the Court concludes that the policy in question does not give rise to the type of reasonable expectation necessary to support a claim for breach of an implied contract under New Mexico law in this situation. Therefore, Defendant is entitled to summary judgment with regard to the breach of contract claim asserted in Count III of Plaintiff's *Complaint*.

III.    **CONCLUSION**

For the foregoing reasons, the Court concludes that there exist one or more genuine issues of material fact which preclude summary judgment on the Title VII claims asserted in Counts I and II of Plaintiff's *Complaint*.  The Court further concludes that Defendant is entitled to summary judgment on the state-law claim for breach of contract asserted in Count III of Plaintiff's *Complaint* because Defendant's "equal opportunity employment policy" does not create a reasonable expectation of an implied contract under the particular circumstances of this case.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. No. 31] is **GRANTED IN PART** with respect to the state-law claim for breach of contract in Count III of Plaintiff's *Complaint*.

**IT IS FURTHER ORDERED** that  *Defendants' Motion for Summary Judgment* [Doc. No. 31] is **DENIED IN PART** with respect to the Title VII claims in Counts I and II of Plaintiff's *Complaint*.

**SO ORDERED**, this 24th day of February, 2004, in Albuquerque, New Mexico.


_____
**M. CHRISTINA ARMIJO**
United States District Judge